Hudson County Circuit Court.

ESSEX SASH AND DOOR COMPANY, A NEW JERSEY COR-
PORATION, SAM KATCHEN, TRADING AS HILL IRON
WORKS, PLAINTIFFS, v. JOHN J. MURPHY, RECEIVER
OF GARFIELD APARTMENTS, INCORPORATED, A NEW
JERSEY CORPORATION, DEFENDANT.

Decided January 28, 1933.

For the plaintiff Essex Sash and Door Company, *Edward E. Turkel.*

For the Garfield Apartments, *John J. Murphy, pro se.*

BROWN, C. C. J. The defendant moves to discharge a me-
chanics' lien on a lot of land belonging to the Garfield Apart-
ments, Incorporated. A statement of facts agreed upon by the
parties discloses that on the 16th day of December, 1927, the
Garfield Apartments, Incorporated, was the owner of lands
situate in the town of Kearny, known as 194-202 Davis avenue.
On April 16th, 1928, said company became the owner of a lot
of land twenty-five by one hundred feet on the southerly side
of the first mentioned property and contiguous thereto. This
company erected an apartment house on the first described
property; materials were supplied and delivered by the Essex
Sash and Door Company, for the construction of the apart-
ment house, the last delivery being made on August 17th,
1928. On October 29th, 1928, the Garfield Apartments, In-

corporated, by a decree of the Court of Chancery, was declared insolvent and John J. Murphy was appointed receiver. Thereafter an order was entered in the same court permitting the plaintiff to file his lien claim and proceed to judgment. In pursuance of the order of the Court of Chancery the plaintiff filed its lien and instituted proceedings thereon in this court to recover the sum of $10,838.12.

The question presented for decision is whether the tract of land, twenty-five by one hundred feet, purchased by the Garfield Apartments, Incorporated, on the 16th day of April, 1928, is subject to the lien of the plaintiff. It was agreed in the statement of facts that the apartment house was actually constructed on the lot of land designated as 194-202 Davis avenue and that the lot of land subsequently purchased on April 16th, 1928, was purchased for the purpose of "having a driveway on the south side of the said apartment house which they could not have without this additional lot, in order to bring in coal directly without having same to be carried into the building. It was considered necessary by the Public Service Electric and Gas Company to place its service pipes along the outside south wall of the apartment house beneath the surface of the ground in order not to spoil a front apartment and said service pipes are located on part of the said tract on which the plaintiff claims it is entitled to a lien claim, and which matter is at issue. To have control of these premises in order to keep the apartment building in better condition. Subsequently and more recently, due to a change in the heating system from coal to oil, the use of the driveway for the purpose of delivering coal, has been discontinued." There is presented then the situation of an owner constructing an apartment house on a lot of land and during the course of construction found it necessary to purchase an adjoining lot of land for the better use and enjoyment of the building and after the purchase of the additional land the plaintiff furnished materials for which they claim a lien on not only the land on which the apartment house is constructed but also the lot contiguous thereto.

Section 1 of the Mechanics Lien act (Revision of 1896,

page 198; 3 *Comp. Stat., p.* 3291, also amended by *Pamph. L.* 1930, *p.* 972), provides:

"Every building hereafter erected or built within this state shall be liable for the payment of any debt contracted and owing to any person for labor performed and materials furnished for the erection and construction thereof, which debt shall be a lien on such building, and on the land whereon it stands, including the lot or curtilage whereon the same is erected. * * *"

Section 21 of the same act provides:

"When the curtilage or lot on which the building is erected shall not be surrounded by an enclosure separating it from adjoining lands of the same owner, then the lot on which the building lien shall extend, shall be such tract as in the place of its location is usually known and designated as a building lot, and bounded by the lines laid down for its boundaries on any map made for the sale of it or on file in any public office to lay out in lots the tract including it and in cases where no such map exists, such lot may be designated by the claimant in the lien claim, but in no case shall the same exceed half an acre, or include any building not used and occupied with, or intended to be used and occupied with, the buildings for this cost of which the lien is claimed."

The curtilage in the instant case includes not only the land upon which the building was actually constructed but also the adjacent land acquired during the course of construction, the latter having been acquired for the better enjoyment and use of the apartment house. *Riverside Apartment Corp.* v. *Capitol Construction Co.,* 107 *N. J. Eq.* 405; 152 *Atl. Rep.* 763; *Federal Trust Co.* v. *Giugius,* 76 *N. J. Eq.* 495; 74 *Atl. Rep.* 652.

The estate that is subject to a lien under the statute is that which the owner has in the land at the time when the provisions of the statute are attempted to be enforced against him and not merely that which he had when the contract for the erection of the building was entered into by him. *Stewart Contracting Co.* v. *Trenton, &c., Railroad Co.,* 71 *N. J. L.* 568; 60 *Atl. Rep.* 405; *Loizeaux Lumber Co.* v. *Steinberg,*

102 *N. J. L.* 15; 131 *Atl. Rep.* 131. The same reasoning may be applied to the extent óf the land that is subject to the lien. The plaintiff was, therefore, entitled to file his lien against all of the land occupied by the building as well as the lot adjacent thereto purchased by the owner for the better use of the building. 26 *Lawyers' Rep. Ann.* (*N. S.*) 836.

The motion to discharge the lien will be denied.